UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE REFUGIO FLORES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-2888 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner Jose Refugio Flores, a Texas inmate proceeding *pro se* and *in forma pauperis*, filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254.  (Docket No. 1.) Respondent William Stephens has filed a motion for summary judgment (Docket No. 14) and Petitioner has filed a response (Docket No. 15).  After reviewing the record, the pleadings, and the applicable law, including the Anti-Terrorism and Effective Death Penalty Act's (AEDPA) deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny the petition.  The Court will not certify any issue for appeal.  The Court sets forth the reasons for its decision below.

## BACKGROUND

Petitioner is presently incarcerated at the Coffield Unit of the Texas Department of Criminal Justice – Correctional Institutions Division pursuant to a judgment and sentence of the 209th District Court of Harris County, Texas, in Cause Number 1211058.  The State of Texas charged Petitioner with aggravated assault of a family member.  The trial testimony showed that during an argument with his wife (Adela Flores) Petitioner took a knife, held it to her throat, and threatened to kill her.  After hearing testimony from Mrs. Flores and her children, the jury found

Petitioner guilty.  The trial court found an enhancement paragraph true and assessed punishment at twenty-five years' imprisonment.

Petitioner appealed his conviction to the Fourteenth Court of Appeals of Texas.  After the intermediate appellate court affirmed, the Texas Court of Criminal Appeals refused his petition for discretionary review on February 15, 2012.  *See Flores v. State*, No. 14-10-00976-CR, 2011 WL 5009483 (Tex. App.-Houston [14thDist.] Oct. 20, 2011) (pet. ref'd).  Petitioner subsequently filed a state habeas action through an attorney.  After the State provided an answer and Petitioner's prior attorneys submitted affidavits, the trial court entered findings of facts and conclusions of law.  The Court of Criminal Appeals denied Petitioner's habeas application. Federal review followed.

Petitioner has filed a federal petition for a writ of habeas corpus raising four claims:

1.    The State knowingly used false testimony to secure his conviction.

2.    The trial judge violated Petitioner's constitutional rights by commenting on the anticipated length of his trial.

3.    Trial counsel provided ineffective representation by not objecting to the trial judge's comments on the anticipated length of trial.

4.    The trial judge unconstitutionally shifted the burden to the defense by instructing the jury that they would decide the question of guilt or innocence.

Respondent has filed an answer and motion for summary judgment.  (Docket No. 14.) Respondent argues that procedural and substantive law conclusively shows that Petitioner is not entitled to habeas relief.  This matter is ripe for adjudication.

## LEGAL STANDARDS

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 787 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions."). While "the Framers considered the writ a vital instrument for the protection of individual liberty," *Boumediene v. Bush*, 553 U.S. 723, 743 (2008), "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 15 (2013). Accordingly, "[t]he role of federal habeas proceedings . . . secondary and limited." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983); *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("The States possess primary authority for defining and enforcing the criminal law."). Enshrining principles of finality, comity, and federalism, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") confines both the nature and scope of federal habeas review

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Titlow*, ___ U.S. at ___, 134 S. Ct. at 16. Under 28 U.S.C. § 2254(d), "a federal court cannot grant a petition for a writ of habeas corpus unless the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, 560 U.S370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)). "This standard . . . is difficult to meet." *Metrish v. Lancaster*, 569 U.S. ___, ___, 133 S. Ct. 1781, 1786 (2013) (quotation omitted). The Supreme Court has clarified that relief lies under section 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts"; or (2) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably

applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Early v. Packer*, 537 U.S. 3, 7-8 (2002). This "substantially higher threshold" focuses not on whether the state court was "incorrect, but on whether its determination was 'unreasonable.'" *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004); *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002). To meet this standard, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at ___, 131 S. Ct. at 786-87.

Federal courts likewise afford significant deference to a state court's factual determinations, presuming all factual findings to be correct. *See* 28 U.S.C. § 2254(e)(1),(2). A petitioner may only rebut the presumption "by clear and convincing evidence." *Id*. Also, "AEDPA generally prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts." *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (relying on 28 U.S.C. § 2254(e)(2)).

## ANALYSIS

### I.    Perjury Claim (Claim One)

The State called seven witnesses at trial. Petitioner complains that three of the witnesses -- his wife Adela Flores, his son Jose Flores, and his daughter Loraine Flores -- testified falsely. Petitioner also contends that a translator and notary public committed perjury, apparently because of their part in securing an affidavit from Mrs. Flores when she sought a protective order

against him.  When Petitioner raised this claim on state habeas review, he only argued that his wife provided false testimony.  Respondent argues that a procedural bar prevents federal consideration of Petitioner's claim insofar as it alleges perjury by witnesses other than Adela Flores.  The Court will first consider Mrs. Flores' testimony before deciding whether procedural law forecloses review of the remainder of Petitioner's claim.

### A.    Adela Flores's Testimony

Petitioner alleges that Adela Flores testified falsely about the events that led up to his arrest.  Two days after Petitioner threatened his wife with imminent bodily injury with a knife, Mrs. Flores applied for a protective order.  In the accompanying affidavit, Mrs. Flores described how she was sharpening knives that she used at work when Petitioner picked one up and pointed it at her face.  After Petitioner said he was going to kill her, her son grabbed the knife and hid it. At trial, however, Mrs. Flores testified that her son was outside when she arrived home from work.  She went inside the kitchen, sharpened her knives, and then put them in the sink. Petitioner then picked up a knife from the table and held it to her throat.  He then set down the knife and she left the room.  (Tr. Vol. 3 at 87-92.)  Petitioner contends that Mrs. Flores perjured herself while testifying at trial.

The Supreme Court has "made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court explained that the prohibition against false testimony is "implicit in any concept of ordered liberty."  "In order to establish a *Napue* violation, the defendant must show (1) the statements in question are

actually false; (2) the prosecution knew that the statements were false; and (3) the statements were material." *United States v. Haese*, 162 F.3d 359, 365 (5th Cir. 1998).

Trial counsel cross-examined Mrs. Flores regarding the inconsistencies between her trial testimony and the statements in the prior affidavit.  (Tr. Vol. 3 at 100-03.)  On redirect, however, Mrs. Flores explained that she did not speak English and that translation problems accounted for differences between the two stories.  Mrs. Flores explained that after she left the room her son took the knife and hid it.  She did not see him, but "several" people told her that he had hidden the knife.  She explained that she never told anyone that her son took the knife from Petitioner. (Tr. Vol. 3 at 104-06.)   Based on the trial record, the state habeas court found:

> 13.     The complainant testified that her son was not present during [Petitioner's] assault upon the complainant which was not consistent with her assertions in the affidavit for protective order (Ill R. R. at 89-91);
>
> 14.     The complainant's son testified that he did not personally observe [Petitioner's] assault upon the complainant (III R.R. at 37-38);
>
> 15.     [Petitioner's] trial counsel attempted to impeach the complainant on cross-examination and re-cross examination with the discrepancy between her protective order affidavit and trial testimony as related to her son's presence during [Petitioner's] assault upon the complainant (III R.R. at 100-03, 107-08);
>
> 16.     The complainant testified that the protective order affidavit was translated incorrectly which resulted in the inaccurate statement in the affidavit that her son was present during the assault (III R.R. at 104·06);
>
> 17.     [Petitioner] fails to prove that his conviction was secured by perjured testimony[.]

(State Habeas Record at 79.)

Petitioner has not shown that the state court's adjudication was contrary to, or an unreasonable application of, federal law.  *See* 28 § 2254(d)(1).[1]  The parties discussed the differences between the two accounts, and Mrs. Flores provided a reason for the apparent

---

[1]     The Court's analysis would be the same whether considered under AEDPA or *de novo*.

changes in her version of events.  Trial counsel's closing argument began by telling the jury "[o]ne thing we know for sure about this case is there are so many inconsistent statements." (Tr. Vol. 3 at 129.)  Because of the inconsistencies, trial counsel urged the jury to find that the State's witnesses were not credible.

The jury had before it Mrs. Flores' testimony explaining why her account at trial differed from that in the affidavit.  Petitioner has not shown that her trial testimony was actually false, particularly because her son's trial testimony corroborated her story.  Moreover, even if her testimony had been false, Petitioner has not shown that the State knew that she would not testify truthfully.  Accordingly, Petitioner has not met the AEDPA standard by showing that the state court's adjudication was contrary to, or an unreasonable application of, federal law.  *See* 28 U.S.C. § 2254(d)(1).

### B.      Procedural Bar

Respondent contends that Petitioner never gave the state courts an opportunity to decide whether the prosecution adduced false testimony from Jose Flores, Loraine Flores, Elizabeth Batton and Vatherine Ann Keyes.  Petitioner's state habeas application only argued that Adela Flores's testimony violated his constitutional rights.  On that basis, Respondent argues that the remainder of Petitioner's perjured-testimony claim is unexhausted and procedurally barred.

A federal habeas corpus action provides an important, but limited, examination of state criminal judgments.  Federal courts have long required that state courts be given the first chance to rectify constitutional violations.  *See Ex parte Royall*, 117 U.S. 241, 251-52 (1886).  To avoid the "'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance,"

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires exhaustion of federal claims in the highest state court before federal habeas relief becomes available. *See* 28 U.S.C. 2254(b)(1). To satisfy exhaustion, state courts must have "a 'fair opportunity to apply controlling legal principles to the facts bearing upon [the] constitutional claim.'" *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). "Exhaustion 'requires a state prisoner to present the state courts with the same claim he urges upon the federal courts.'" *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) (quoting *Harless*, 459 U.S. at 6); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) (holding that petitioner did not fairly present federal claim by exhausting a "somewhat similar," but doctrinally distinct, state law claim); *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) ("An argument based on a legal theory distinct from that relied upon in the state court does not meet the exhaustion requirement.").

Because Petitioner did not give the state courts the opportunity to assess whether the State presented false evidence through Jose Flores, Loraine Flores, Elizabeth Batton or Catherine Ann Keyes, his federal habeas claim based on their testimony is unexhausted. Texas employs a stringent abuse-of-the-writ doctrine that bars Petitioner from presenting the unexhausted portion of his false-testimony claim in a successive state habeas application. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005); Tex. Code Crim. Pro. 11.07 § 4. "[F]ederal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (stating that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment"). Under the procedural bar doctrine, "a habeas

petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.   In such cases, principles of comity and federalism preclude federal review.  *See Lambrix v. Singletary*, 520 U.S. 518, 523 (1997).   The Fifth Circuit has long held that both grounds which the state habeas court relied on are adequate to bar federal consideration of defaulted claims.  *See Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).   The operation of state procedural law precludes federal review of the unexhausted portion of Petitioner's claim.  *See Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004); *Henderson v. Crockwell*, 333 F.3d 592, 605 (5th Cir. 2003); *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999).

A procedural bar is not insuperable.  The Supreme Court has noted that:

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate *cause* for the default and *actual prejudice* as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a *fundamental miscarriage of justice*.

*Coleman*, 501 U.S. at 750 (emphasis added).   Petitioner argues that he can overcome the procedural bar because the state court did not hold an evidentiary hearing, thereby preventing him from developing the factual basis for the barred claims.   Texas law, however, affords trial courts discretion in deciding the necessity of an evidentiary hearing.  *Ross v. Estelle*, 694 F.2d 1008, 1012 n. 2 (5th Cir. 1983) (citing TEX. CODE CRIM. PRO. art. 11.07 § 2(d); *Ex Parte Young*, 418 S.W.2d 824 (Tex. Crim. App. 1967)).   The state habeas court did not find any factual issues

needing development through a hearing.  Neither Petitioner nor his counsel[2] gave any indication that additional factual inquiry would lead to the claim he raises for the first time on federal review.  Thus, Petitioner has not shown cause to overcome the procedural bar.

Petitioner has likewise not shown actual prejudice.  For the same reasons that this Court denied his claim relating to Mrs. Flores, Petitioner has not shown that the other individuals gave false testimony.[3]  The operation of adequate and independent procedural law, therefore, prohibits federal consideration of the unexhausted portions of Petitioner's false-evidence claim.

## II.   Trial Court Error (Claims Two, Three, and Four)

Petitioner contends that the trial court violated his due process rights.  Petitioner first argues that the trial judge improperly commented on the potential length of his trial.  At the beginning of jury selection, the trial court told the venire panel that the parties would select a jury "who would be seated over here for about the next day-and-a-half."  (Tr. Vol. 2 at 3.)  Because the trial judge "tr[ies] these cases a lot" he continued by commenting "[t]hat is the first good news you'll hear from the Court.  This is not going to be one of those cases that you've heard about or read about where jurors come down here for an extended period of time."  (Tr. Vol. 2 at 3.)  Later, after the parties had made their closing arguments, the trial judge told jurors that "if you have not been able to reach a verdict by 4:00, maybe 4:05, we are going to ask you to

---

[2]    Petitioner blames his state habeas attorney for not fully developing this claim.  In *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1320 (2012), the Supreme Court recently found that ineffective assistance by a state habeas attorney may amount to cause under some circumstances.  *See also Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013) (applying *Martinez* to cases arising from Texas courts).  However, *Martinez* only allows inmates to overcome the procedural bar of ineffective-assistance-of-counsel claims.

[3]    Having reviewed the merits of Petitioner's arguments, the Court would deny relief if his claim was fully available for federal review.

come back in the morning and continue deliberations.  If you reach one before then, of course, we'll bring you out and receive the verdict."  (Tr. Vol. 3 at 144.)

The trial lasted one day.  Jurors deliberated for less than an hour before finding Petitioner guilty.  Petitioner complains that the trial court's comments limited the jury's time to deliberate. Petitioner argues that the trial court's comments rushed the jury, thus violating his constitutional rights.

Petitioner also contends that the trial court denied his due process rights by placing a burden on him to prove his innocence.  During jury selection, the trial court referred to the trial of Petitioner's guilt as "the guilt-innocence" phase.  (Tr. Vol. 2 at 26-27.)  Petitioner alleges that this comment mischaracterized the burden held by each party.  According to Petitioner's argument, the trial judge's comment required jurors to make an affirmative decision about innocence, removing the State's burden to prove him guilty beyond a reasonable doubt.

Petitioner raised these arguments on state habeas review.  The state habeas court, however, found that "these 'record' claims were waived after [Petitioner] failed to object at trial and present these complaints on direct appeal."  (State Habeas Record at 79.)  The state habeas court, therefore, found that Petitioner had procedurally defaulted judicial consideration of his claims by (1) failing to make a contemporaneous objection and (2) failing to raise the claim on state appellate review.  The state habeas court's procedural ruling bars federal habeas review.

As previously discussed, an inmate can overcome a procedural bar by an adequate showing of cause and prejudice.  Petitioner contends that trial and appellate counsel's failure to challenge the state court's comments should forgive the procedural bar.  In a separate ground for

relief, Petitioner also argues that his prior attorneys provided ineffective representation by not raising those constitutional challenges in a timely manner.

Notwithstanding the procedural default, the state habeas court considered the barred claims in the alternative.  Both trial and appellate counsel filed affidavits describing their reasons for not challenging the trial court's comments.  (State Habeas Record at 71, 74-75.)  Based on their affidavits, the state habeas court found that "neither trial counsel nor appellate counsel believed that these statements were improper or harmful to [Petitioner]."  (State Habeas Record at 79.)  Also, the state habeas court alternatively considered the merits of the defaulted claims and found that "[t]he trial court did not commit error, act improperly, or prejudice Applicant by the trial court's statements in question made to the venire panel and the jury panel."  (State Habeas Record at 79.)  Petitioner did not "show that he was denied due process based upon perjured testimony or from the trial court's statements to the venire panel and jury panel[.]" (State Habeas Record at 80.)

Petitioner has not shown that the state court's decision was contrary to, or an unreasonable application of, federal law.  A trial judge's comments violate due process "only if the judge appears to predispose the jury toward a finding of guilt or to take over the prosecutorial role."  *Derden v. McNeel*, 978 F.2d 1453, 1459 (5th Cir. 1992); *see also Cotton v. Cockrell*, 343 F.3d 746, 754 (5th Cir. 2003).  Petitioner contends that trial counsel should have objected to the trial court's comments about the length of trial because they limited the amount of time jurors felt they could consider his case.  Trial counsel, however, explained why he did not object to the trial court's comment about the anticipated length of trial: "During my forty year law practice, I have represented numerous clients in trial.  It is not uncommon for judges to give the venire panel an idea of how long the trial is expected to take in order for the venire panel to provide

answers during voir dire that might affect their potential jury service." (State Habeas Record at 74.) Even so, immediately after mentioning the anticipated length of time the trial judge assured jurors that he was "in no way trying to encourage you to hurry up with a verdict." (Tr. Vol. 2 at 3.) The trial judge guaranteed that jurors "would not be rushed in any way." (Tr. Vol. 2 at 4.) Trial counsel would not need to object as the trial judge himself cured any allegedly improper comments.

Trial counsel also did not provide ineffective representation by not objecting when the trial court referred to the trial as the "guilt innocence" phase. The trial judge used a phrase common to criminal law. Even if the jury could misconstrue the trial judge's isolated comment as an invitation to remove the burden from the State, the jury instructions adequately cured any error. The jury instructions informed the jury that "[t]he law does not require a defendant to provide his innocence[.] . . . The presumption of innocence alone is sufficient to acquit the defendant[.]" (Clerk's Record at 36.)

Accordingly, Petitioner has not overcome the procedural bar on these claims. Even if the merits were fully available for federal review, however, Petitioner has not shown that he is entitled to federal habeas relief on his claims relating to the trial judge's comments or his attorneys' representation.

## CERTIFICATE OF APPEALABILITY

AEDPA prevents appellate review of a habeas petition unless the district or circuit courts certify specific issues for appeal. *See* 28 U.S.C. § 2253(c); FED. R. APP. PRO. Rule 22(b). Although Petitioner has not yet requested a Certificate of Appealability ("COA"), the Court can consider the issue *sua sponte*. *See Alexander*, 211 F.3d at 898. A court may only issue a COA

when "the applicant has made a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Clear and binding precedent forecloses relief on Petitioner's claims.  Under the

appropriate standard, Petitioner has not shown that appellate consideration of any claim is

warranted.  Thus, this Court will not certify any issue for review by the Fifth Circuit.

## CONCLUSION

The Court finds that there is no genuine issue of material fact in this habeas action, and

that Respondent is entitled to summary judgment as a matter of law.  It is, therefore, ORDERED

that:

1.   Respondent's Motion for Summary Judgment (Docket No. 14) is GRANTED.

2.   This petition is DISMISSED with prejudice.

3.   A Certificate of Appealability from this decision is DENIED.

4.   All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of the Order to the parties.

SIGNED at Houston, Texas, this 30th day of September, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE